Filed 9/25/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.D. et al., Persons Coming Under the Juvenile Court Law. | |
| A.H.,<br><br>  Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO CITY AND COUNTY,<br><br>  Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY et al.,<br><br>  Real Parties in Interest. | A137236<br><br>(San Francisco City and County Super. Ct. Nos. JD10-3106B, JD10-3106-C) |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>  Plaintiff,<br><br>v.<br><br>A.H.,<br><br>  Defendant and Appellant;<br><br>J.D. et al.,<br><br>  Respondents. | A137408<br><br>(San Francisco City and County Super. Ct. Nos. JD10-3106B, JD10-3106-C) |

**I.**

**INTRODUCTION**

  This opinion addresses two appellate proceedings—a writ petition and an appeal—that arise from the same juvenile dependency cases in the San Francisco Superior Court (the juvenile court), and were consolidated in this court. The person seeking appellate

1

review in both matters is the paternal grandmother (Grandmother) of a group of siblings who are the subject of the dependency proceedings. Grandmother was appointed guardian of the sibling group by the probate department of the San Mateo Superior Court (the probate court) in 2004, more than five years before the initial petition was filed in the dependency proceedings.

Grandmother's appeal was taken from a juvenile court order granting two petitions filed jointly by the two youngest members (collectively Minors) of the sibling group: one under Welfare and Institutions Code section 728,[1] seeking to terminate Grandmother's predependency probate guardianship, and another under section 388, seeking to change Minors' placement by removing them from Grandmother's custody, and placing them in the home of an aunt and uncle (Aunt and Uncle). Grandmother's writ petition challenges the juvenile court's subsequent order setting a permanency planning hearing under section 366.26.

Grandmother contends that the juvenile court could not terminate her probate guardianship in the absence of a recommendation from the San Francisco Human Services Agency (the Agency). She also argues that the termination could not take effect in the absence of an order from the probate court. We reject both of these contentions, and hold that under the governing statutes, a juvenile court has the authority to terminate a predependency probate guardianship in response to a motion filed by counsel for the dependent minors, whether or not the social services agency that initiated the dependency proceedings so recommends, and even if the probate guardianship was established in a different county.

Grandmother also argues the juvenile court erred in: (1) changing Minors' placement without finding by clear and convincing evidence that her continued custody of Minors would be detrimental to them; (2) removing Minors from her custody without offering her reunification services; and (3) setting a permanency planning hearing under

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

2

section 366.26 without first offering her an opportunity to reunify with Minors. All of these contentions rest on the premise that Grandmother's probate guardianship was improperly terminated. As we reject that premise, we also reject Grandmother's additional arguments.

## II.

### FACTS AND PROCEDURAL BACKGROUND

In December 2004, the probate court appointed Grandmother to be the legal guardian of Minors, their two older full siblings (Siblings), and their mother's oldest child, their half-sister. At the time, Minors' father was serving an extended prison sentence, and their mother could not be located.[2] From December 2004 until the spring of 2010, Minors and Siblings, as well as the older half-sister, lived with Grandmother in San Francisco.

The Agency initiated the dependency proceedings in March 2010, after Siblings complained that Grandmother was physically abusing them. In August 2010, the juvenile court placed Siblings with Aunt and Uncle, and returned Minors to Grandmother's custody. In June 2011, Minors' counsel filed a section 388 petition seeking to change Minors' placement to the home of Aunt and Uncle, and to terminate Grandmother's probate guardianship. The juvenile court denied the petition, and Minors appealed (the prior appeal).

In June 2012, this court affirmed the denial of Minors' section 388 petition. (*In re A.D.* (June 8, 2012, A133223) [nonpub. opn.] (*In re A.D.*).[3]) We held that a section 388 petition "is not the appropriate procedural vehicle for terminating a predependency

---

[2] Minors' father remains incarcerated. He appeared through counsel in the proceedings below, but waived reunification and has not filed a brief on this appeal. The whereabouts of Minors' mother were still unknown as of January 2013.

[3] Our opinion on the prior appeal in this matter included a detailed recital of the facts and procedural history of the dependency proceedings from their inception through mid-2011. In this opinion, we provide only those facts that are relevant to the issues presently before us, or when helpful as background. The children referred to in the prior opinion as Sister 2 and Sister 3 are those referred to as Minors in this opinion.

3

probate guardianship." (*In re A.D.*, *supra*, [p. 9].) We also held that because Grandmother was "a predependency [probate] guardian rather than a dependency guardian" (*id.* [at p. 10]), Minors could not be removed from her custody in the absence of "clear and convincing evidence . . . of one of the grounds for removal specified in section 361, subdivision (c)." (*Id.* [p. 11], fn. omitted.)

While the prior appeal was pending, in February 2012, Minors filed another section 388 petition, and a petition under section 728 for termination of Grandmother's probate guardianship (the February petitions).[4] On April 25, 2012, the juvenile court denied the February section 728 petition, and set the February section 388 petition for hearing on June 11, 2012. On that date, however, the hearing was continued to August 27, 2012.

On August 2, 2012, after our opinion on the prior appeal became final, Minors filed another section 388 petition and another section 728 petition (the August petitions). Hearings on the August petitions were conducted during portions of four nonconsecutive days, starting on August 27, 2012, and ending on November 27, 2012. At the conclusion of the hearings, the juvenile court entered an order granting both of the August petitions, terminating Grandmother's probate guardianship, and placing Minors with Aunt and Uncle. The court ordered that Grandmother be afforded visitation with Minors, but did not order any reunification services for her. Grandmother filed a timely notice of appeal from that order.

In the meantime, the Agency twice recommended to the juvenile court that the dependency proceedings regarding Minors be dismissed, based on its view that Minors were no longer in a situation that called for juvenile court intervention. At a hearing on January 10, 2013, the juvenile court entered an order setting a permanency planning hearing under section 366.26. Grandmother filed a timely notice of intent to file a writ

---

[4] While the February petitions were pending, the juvenile court issued an order terminating Grandmother's probate guardianship of Siblings, selected legal guardianship as Siblings' permanent plan, named Aunt and Uncle as their legal guardians, and dismissed the dependency proceedings as to Siblings.

petition seeking review of that order. We consolidated the proceedings in this court, appointed counsel to represent Minors,[5] and issued a stay of the section 366.26 hearing pending resolution of Grandmother's appeal and writ petition.

## III.

## DISCUSSION

### A. Termination of Probate Guardianship

Grandmother's principal contention is that the juvenile court erred in terminating her probate guardianship of Minors under subdivision (a) of section 728. Her arguments raise questions of law regarding the interpretation of the statute, as to which our review is de novo. (*In re M.C.* (2011) 199 Cal.App.4th 784, 804-805; *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 800.) "[W]hen construing any statute, '[o]ur task is to discern the Legislature's intent. The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' [Citation.]" (*Krug v. Maschmeier*, *supra*, 172 Cal.App.4th at p. 802, quoting *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

Section 728 was enacted in 1998. (Stats. 1998, ch. 390, § 4.) As relevant to the issues presented in this appellate proceeding, subdivision (a) of the statute provides as

---

[5] The Agency's position is that it is no longer necessary for Minors or Siblings to remain in the juvenile dependency system, because they are not at risk of abuse regardless whether they reside with Grandmother or with Aunt and Uncle. For this reason, the Agency notified this court that it did not intend to respond to the writ petition or to file a brief regarding the appeal. Thus, in the current appellate proceedings, it is Minors, through their counsel, who have taken on the task of responding to Grandmother's arguments.

follows: "The juvenile court *may terminate* or modify a guardianship of the person of a minor previously established under the Probate Code, . . . if the minor is the subject of a petition filed under Section 300, 601, or 602. If the probation officer supervising the minor provides information to the court regarding the minor's present circumstances and makes a recommendation to the court regarding a motion to terminate or modify a guardianship established in any county under the Probate Code, . . . of the person of a minor who is before the juvenile court under a petition filed under Section 300, 601, or 602, the court shall order the appropriate county department, or the district attorney or county counsel, to file the recommended motion. *The motion may also be made by* the guardian or *the minor's attorney*." (Italics added.)

We held in *In re A.D.*, *supra*, that under the plain language of section 728, counsel for minors in a dependency proceeding has the authority to file a motion in the juvenile court to terminate a predependency probate guardianship, *without* first obtaining an order from the juvenile court ordering or authorizing counsel to do so. (*Id.* [p. 9.]) That holding is the law of the case in this matter. (See generally *People v. Boyer* (2006) 38 Cal.4th 412, 441.) Grandmother has neither argued otherwise, nor attempted to persuade us that the law has changed in the interim. In any event, we adhere to our prior reading of the statute's plain language.

Grandmother argues, however, that the minors' counsel may not file a motion under section 728 unless and until the social services agency that initiated the dependency (the responsible agency) has recommended termination of the probate guardianship. Similarly, Grandmother contends that the juvenile court's order terminating the guardianship is not effective unless it rests on a recommendation from the responsible agency. As authority for these arguments, Grandmother cites *In re Angel S.* (2007) 156 Cal.App.4th 1202 (*Angel S.*), arguing that a "careful reading" of that opinion reveals the need for a recommendation from the responsible agency before a predependency probate guardianship can be terminated by a juvenile court.

In *Angel S.*, *supra*, 156 Cal.App.4th 1202, as here, a minor's relative was appointed by a probate court as the minor's guardian. The minor was injured while in the

guardian's custody, and dependency proceedings were initiated. The minor was placed in foster care. After the probate guardian failed to reunify with the minor, the responsible agency recommended that the probate guardianship be terminated. Based on that recommendation, the juvenile court ordered the responsible agency to file a motion to terminate the probate guardianship. (*Id.* at p. 1205.) In response, the agency filed a petition under section 388, rather than a motion under section 728. (*Id.* at pp. 1205-1206.) The juvenile court terminated the probate guardianship, and the guardian appealed. The Third District held that the agency's motion should have been filed under section 728, but that the error did not deprive the juvenile court of jurisdiction to terminate the probate guardianship, and the procedural issues had been waived by the guardian's failure to object in the juvenile court proceedings. Accordingly, the court affirmed the order terminating the probate guardianship. (*Id.* at pp. 1209-1210.)

In the course of its discussion of these issues, the court in *Angel S.* described the section 728 procedure as "contemplat[ing] two steps. [Citations.] First, the probation officer or social worker makes a recommendation to the court to terminate the probate guardianship. [Citation.] . . . Upon receiving the recommendation, the court must order the appropriate agency or county counsel to file a motion pursuant to section 728. [Citations.] . . . Once the motion . . . is before the juvenile court, the juvenile court then makes a determination whether to enter an order terminating the probate guardianship." (*Angel S.*, *supra*, 156 Cal.App.4th at p. 1207.)

We agree with the *Angel S.* court that this is the procedure to be followed when the *social worker* is the one taking the initiative—the situation described in the *second* sentence of section 728, subdivision (a), which provides: "*If* the probation officer [i.e., social worker] supervising the minor . . . makes a recommendation to the court regarding a motion to terminate . . . a guardianship established . . . under the Probate Code, . . . the court shall order the [responsible agency] to file the recommended motion." (§ 728, subd. (a), italics added.) However, the *Angel S.* court was not dealing with a case in which the initiative to terminate the probate guardianship came from the *minor*. This situation is governed by the *last* sentence of section 728, subdivision (a), which allows

7

the minor's counsel to file the motion, and makes no mention of any precondition to counsel's authority to do so.

Essentially, Grandmother's argument is that the qualifying clause at the beginning of the second sentence of the statute ("If the probation officer . . . makes a recommendation . . .") also governs the succeeding sentence authorizing the minor's counsel to file the motion. This argument is contrary to the rule of statutory interpretation that qualifying words, phrases and clauses are to be applied to the words or phrases immediately adjacent to them, and are not to be construed as extending to or including others more remote. (See generally *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743, superseded by statute on another ground as stated in *In re Angelique C.* (2003) 113 Cal.App.4th 509, 518-519; *People v. Franklin* (2003) 105 Cal.App.4th 532, 538.) Accordingly, we decline to construe the statute in this fashion. Thus, Minors' section 728 petition was properly brought by their counsel in this case.

Grandmother apparently concedes that when a minor who is a ward under an existing probate guardianship becomes the subject of dependency proceedings, the juvenile court has statutory jurisdiction under section 728 to *terminate* the probate guardianship. (*Angel S.*, *supra*, 156 Cal.App.4th at p. 1209.) Indeed, under section 304, the juvenile court has *exclusive* jurisdiction over custody and guardianship issues regarding a minor who is the subject of dependency proceedings.

Section 304 provides: "After a [juvenile dependency] petition has been filed . . . , and until the time that the petition is dismissed or dependency is terminated, no other division of any superior court may hear proceedings [under] the Family Code regarding the custody of the child or proceedings under . . . the Probate Code, except as otherwise authorized in this code, regarding the establishment of a guardianship for the child. While the child is under the jurisdiction of the juvenile court all issues regarding his or her custody shall be heard by the juvenile court." Similarly, rule 5.620(a) of the California Rules of Court provides: "Once a petition has been filed in juvenile court alleging that a child is described by a subsection of section 300, and until the petition is

8

dismissed or dependency is terminated, the juvenile court has sole and exclusive jurisdiction over matters relating to the custody of the child and visitation with the child."

Minors cite *In re William T.* (1985) 172 Cal.App.3d 790 for the proposition that while dependency proceedings are pending, juvenile courts have exclusive jurisdiction over custody, visitation, and guardianship of the minors who are the subject of the dependency petition. Grandmother disputes the authoritativeness of this decision. Whether or not *In re William T.* was correctly decided has no bearing the issue involved in the present proceedings, however. The statutory scheme has changed since *In re William T.* was decided in 1985.

Section 304 was not enacted until 1987. (Stats. 1987, ch. 1485, § 8.) Under the law in effect at the time *In re William T.* was decided, former section 304.5 expressly gave family law courts concurrent jurisdiction over custody matters involving minors who were also the subject of dependency proceedings in juvenile court. (See *In re William T.*, *supra*, 172 Cal.App.3d at p. 799.) That statute, however, was repealed by the very same legislative enactment that added section 304. (Stats. 1987, ch. 1485, § 9.) This history serves to underscore that the Legislature's intent in enacting section 304 was to vest the juvenile court with *exclusive* jurisdiction over dependent minors. Thus, Grandmother's challenge to the continuing validity of *In re William T.*, *supra*, does not affect our reading of the statutory scheme as it now exists.

In addition to her general challenge to the exclusivity of the juvenile court's jurisdiction over minors who are the subject of dependency proceedings, Grandmother's appeal briefs specifically argue that section 388 does not permit a juvenile court to *modify* an order issued by a probate court in another county. This argument relies on a misconstruction of the record. The juvenile court in the present case did not modify Grandmother's probate guardianship in response to Minors' petition under section 388. Rather, the juvenile court *terminated* Grandmother's probate guardianship in response to Minors' motion under section 728. That statute expressly authorizes a juvenile court with dependency jurisdiction over a minor to terminate a predependency probate guardianship

9

of that minor, and does not limit that authority to probate guardianships established in the same county.

Grandmother also argues that the termination of a predependency probate guardianship by a juvenile court is not effective unless and until it is confirmed by an equivalent order from the probate court. This argument is belied by the plain language of section 728, subdivisions (a) and (b), and the implementing court rules, California Rules of Court, rules 5.620(a) and 5.620(e). Section 728, subdivision (a) provides unambiguously that a juvenile court "may *terminate*" a probate guardianship. (Italics added.) Grandmother's interpretation of the statute would render that language meaningless. " 'An interpretation that renders statutory language a nullity is obviously to be avoided. [Citation.]' [Citation.]" (*In re M.C.*, *supra*, 199 Cal.App.4th at p. 807, quoting *Williams v. Superior Court* (1993) 5 Cal.4th 337, 357.)

Moreover, when the statutory scheme does refer to the probate court, it does so in a way that makes clear Grandmother's position is incorrect. Section 728, subdivision (b), as well as rule 5.620(e)(2) of the California Rules of Court, require the juvenile court to give *notice* to the probate court of the order terminating the probate guardianship. They also require the *clerk* of the probate court, upon receipt of that notice, to file the notice in the probate court file, and to serve it on all parties entitled to notice in the probate proceeding. Nothing in the statute or the implementing court rule mentions any need for the probate court to issue an order of its own. On the contrary, the fact that the statute directs the probate court *clerk* to give notice of the juvenile court's order indicates a legislative intent to make the juvenile court's order effective without any further judicial action by the probate *court*.

Nor would such a requirement make sense, in the context of the overall statutory scheme and the underlying public policy it furthers. As already noted, section 304 gives juvenile courts exclusive jurisdiction over minors who are their dependents, and expressly precludes family courts and probate courts from issuing orders regarding the custody or guardianship of such minors. The obvious intent of this provision is to eliminate the possibility that different courts claiming jurisdiction over the minor could

10

issue inconsistent orders regarding the minor's custody. If a probate court order were required before a juvenile court's order terminating a probate guardianship could become effective, and the probate court declined to issue such an order, the result would be precisely the kind of inter-jurisdictional conflict that section 304 and section 728, taken together, were designed to preclude. Thus, to construe the statutes as Grandmother does would defeat the legislative intent of the statutory scheme.

In support of her argument that a probate court order was required to terminate her guardianship, Grandmother relies solely on *In re Gloria A.* (2013) 213 Cal.App.4th 476. Grandmother contends that this case indirectly supports her argument because it stands for the proposition that the rights with regard to Minors that were granted to Grandmother by the probate court in San Mateo County could not be revoked by the juvenile court in San Francisco County.

In *In re Gloria A.*, *supra*, 213 Cal.App.4th 476, a child who was born in Mexico moved to California with her mother after the child's father died. The mother was later returned to Mexico and convicted of murdering the father. When the mother left California, she entrusted the child to her boyfriend. The boyfriend refused to turn the child over to her paternal grandfather, who called the police. The police, in turn, contacted the child welfare authorities. A Mexican court granted the grandfather custody of the child, but by that time, juvenile dependency proceedings had been instituted, and the child had been declared a dependent. The grandfather moved under section 388 to have the child placed in his custody, and the juvenile court denied the motion. On appeal, the court held that California was not the child's "home state" for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). (Fam. Code, § 3400 et seq.) Thus, under the applicable statutory scheme, the California juvenile court could not assert subject matter jurisdiction over the proceeding on that basis. The court therefore reversed and remanded for the juvenile court to determine whether any other basis for subject matter jurisdiction existed under the UCCJEA.

In the present case, Grandmother does not contend that the juvenile court in San Francisco did not have subject matter jurisdiction over Minors at the time it issued the

11

challenged orders. Thus, the UCCJEA does not come into play here. As discussed *ante*, the statutes that do apply, read together, expressly vest the San Francisco juvenile court with *exclusive* jurisdiction over Minors' custody. Accordingly, the holding in *In re Gloria A.*, *supra*, 213 Cal.App.4th 476 has no bearing on the issues presented by this case.

Finally, Grandmother argues that her probate guardianship should not have been terminated in the absence of a finding that remaining in her custody would be detrimental to Minors. Not so. Under Probate Code section 1601, as amended in 2002, the best interest of the minor is the *sole* criterion for termination of a probate guardianship. (*Guardianship of L.V.* (2006) 136 Cal.App.4th 481, 490-491.) Thus, reading section 728 together with Probate Code section 1601, the court in *In re Angel S.* held that a juvenile court has jurisdiction to terminate a predependency probate guardianship if it is in the best interest of the minor to do so. (*Angel S.*, *supra*, 156 Cal.App.4th at p. 1208.)

The standard of review applicable to a juvenile court's finding that termination of a predependency probate guardianship is in the best interests of minors is clear error or abuse of discretion. (*Guardianship of L.V.*, *supra*, 136 Cal.App.4th at pp. 487-488.) Grandmother does not argue that the record in the present case reveals clear error or abuse of discretion in the juvenile court's finding that terminating Grandmother's probate guardianship would be in Minors' best interest. On the contrary, our review of the record indicates that the juvenile court's decision was well within the bounds of its sound discretion. Accordingly, we affirm the juvenile court's order under section 728 terminating Grandmother's probate guardianship of Minors.

### B. Change of Minors' Placement

Grandmother argues that the juvenile court erred in granting Minors' section 388 petition without clear and convincing evidence that remaining in Grandmother's custody would be detrimental to Minors. Grandmother's argument, however, is based on the premise that she should have been treated as Minors' predependency probate guardian for purposes of the section 388 petition, because the juvenile court's order terminating her

probate guardianship was not properly issued, and in any event was not effective. For the reasons stated *ante*, that premise is erroneous.

Grandmother correctly points out that minors cannot be removed from their parents or predependency guardians pursuant to a petition under section 388 without a finding of detriment based on clear and convincing evidence. (See *In re M.V.* (2006) 146 Cal.App.4th 1048, 1057-1058; *In re Michael D.* (1996) 51 Cal.App.4th 1074, 1086; see also *In re B. G.* (1974) 11 Cal.3d 679, 699; Cal. Rules of Court, rule 5.570(h)(1)(A).) Based on this proposition, Grandmother argues that the juvenile court applied the wrong standard of proof when it removed Minors from their placement with her. However, this argument assumes that Grandmother *remained* Minors' predependency probate guardian at the time Minors' section 388 petition was granted. This assumption is incorrect, however, because by that time, the juvenile court had already *terminated* Grandmother's probate guardianship under section 728. Once that occurred, Grandmother no longer had the rights of a predependency probate guardian.[6]

When a minor is in the custody of a person who is *not* the minor's parent or predependency probate guardian, the juvenile court may grant a section 388 petition to change a minor's placement based solely on the best interest of the minor, and need not find that the current placement is detrimental. (See *In re Michael D.*, *supra*, 51 Cal.App.4th at pp. 1086-1087.) Thus, as Grandmother acknowledges, once the juvenile court terminated Grandmother's probate guardianship, a lower standard of proof applied, and the juvenile court could properly grant Minors' section 388 petition based on the

---

[6] Grandmother's reply brief asserts that this court held on the prior appeal that the juvenile court did not have the authority under section 388 to remove Minors from Grandmother's custody in the absence of clear and convincing evidence of detriment, as required under section 361, subdivision (c). (See *In re A.D.*, *supra*, [pp. 10-11].) That holding, however, applied only so long as Grandmother remained Minors' predependency probate guardian. Once the juvenile court terminated Grandmother's probate guardianship, the clear and convincing evidence standard under section 361, subdivision (c), no longer applied.

13

finding that it was in Minors' best interest to be placed with Aunt and Uncle rather than Grandmother.

The standard of review of an order under section 388 removing a minor from placement with someone who is *not* a parent or predependency guardian, based on the minor's best interest, is abuse of discretion. (*In re Michael D.*, *supra*, 51 Cal.App.4th at p. 1087.) Grandmother does not argue, either in her writ petition or in her briefs on appeal, that it was an abuse of discretion for the juvenile court to find that placing Minors with Aunt and Uncle was in Minors' best interest. Accordingly, Grandmother has not met her burden on appeal to demonstrate that the trial court's ruling was error under the applicable standard of review.

### C.  Denial of Reunification Services

Between the Agency's filing of the dependency proceedings in March 2010 and the termination of Grandmother's probate guardianship in November 2012, Grandmother received reunification and family maintenance services. Grandmother argues, however, that the juvenile court erred in removing Minors from her custody without offering *further* reunification services, in the absence of clear and convincing evidence that providing such services would be detrimental to Minors.

The statute upon which Grandmother relies—section 361.5—requires that reunification services be provided only to a minor's parent or predependency probate guardian.[7] It does not require that services be provided to a *former* probate guardian *after* the juvenile court has terminated the probate guardianship. (See *In re Merrick V.* (2004) 122 Cal.App.4th 235, 253 ["Notwithstanding the mandatory language of section 361.5, subdivision (a), a predependency or Probate Code guardianship may legally be terminated before reunification services are offered to the guardian"]; see also *In re*

---

[7]  Section 361.5, subdivision (a), provides that with certain exceptions not relevant to these proceedings, "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's . . . guardians." The reference to "guardians" in this statute is to predependency probate guardians. (*In re Carlos E.* (2005) 129 Cal.App.4th 1408, 1420.)

*Carlos E.*, *supra*, 129 Cal.App.4th at pp. 1418-1419 [guardian originally appointed by juvenile court not entitled to reunification services prior to termination of guardianship]; *In re Alicia O.* (1995) 33 Cal.App.4th 176, 182-184.) Accordingly, because the juvenile court terminated Grandmother's probate guardianship before it removed Minors from her home and placed them with Aunt and Uncle, we reject Grandmother's contention that she was entitled to further reunification services in connection with the change in Minors' placement.

### D.  Setting of Permanency Planning Hearing

Grandmother's writ petition challenges the juvenile court's order setting a permanency planning hearing under section 366.26. Her arguments in support of that challenge are all premised on her contention that the juvenile court erred in terminating her probate guardianship. Given our rejection of that premise, we find no basis in the record or the petition for setting aside the juvenile court's order setting the section 366.26 hearing. As that hearing has been stayed pending the resolution of the writ petition and appeal in this court, and the date originally set has now passed, the juvenile court on remand will need to set a new date for the section 366.26 hearing, unless that step has become inappropriate in light of subsequent events or changed circumstances.

### IV.

### DISPOSITION

The juvenile court's order of November 27, 2012, terminating Grandmother's probate guardianship and placing Minors with Aunt and Uncle, is AFFIRMED. The writ petition challenging the juvenile court's order of January 10, 2013, setting a hearing under section 366.26, is DENIED. Our decision as to the writ petition is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(3).) The stay previously issued by this court regarding the section 366.26 hearing as to Minors is hereby dissolved.

15

Unless intervening events or changed circumstances make it no longer appropriate to set a section 366.26 hearing, the juvenile court shall set a new date for that hearing forthwith.


_____
RUVOLO, P. J.


We concur:


_____
RIVERA, J.


_____
HUMES, J.

| | |
|---|---|
| Trial Court | San Francisco City and County Superior Court |
| Trial Judge | Hon. Linda H. Colfax |
| Counsel for Petitioner and Appellant | Law and Mediation Offices of Julia Ten Eyck, Julia Ten Eyck |
| | Law Office of Deborah Dentler, Deborah Dentler, under appointment by the Court of Appeal through the First District Appellate Project, Independent Case System |
| Counsel for Real Party in Interest and Plaintiff San Francisco Human Services Agency | Gordon-Creed, Kelly, Holl & Sugerman, Anne H. Nguyen |
| Counsel for Real Parties in Interest and Respondents J.D. et al. | Leslie A. Barry, under appointment by the Court of Appeal through the First District Appellate Project, Independent Case System |